# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| NINA L. BROWN, o/b/o S.J.B., a minor, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 14 C 5095 |
| | ) | |
| CAROLYN W. COLVIN, Acting | ) | Magistrate Judge Finnegan |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Nina L. Brown, proceeding *pro se*, is seeking to recover Supplemental Security Income ("SSI") on behalf of her minor daughter, S.J.B., under Title IX of the Social Security Act. 42 U.S.C. § 1382c(a)(3)(C). The Acting Commissioner of Social Security ("Commissioner" or "Defendant") denied the application for benefits at all levels of administrative review, prompting this appeal. The parties consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c), and filed cross-motions for summary judgment. After careful review of the record, the Court now grants Defendant's motion, denies Plaintiff's motion, and affirms the decision to deny S.J.B. benefits.[1]

## PROCEDURAL HISTORY

Plaintiff applied for SSI on July 18, 2011, alleging that her then 6-year-old daughter S.J.B. had been disabled since February 8, 2007 due to attention deficit hyperactivity disorder ("ADHD"). (R. 185, 220). The Social Security Administration denied the application initially on September 7, 2011, and again on reconsideration on

---

[1]  In light of this determination, there is no reason to consider transferring this case to Pennsylvania, as Plaintiff has requested. Her motion in that regard [Doc. 23] is denied.

November 29, 2011. (R. 75-80, 84-88). Plaintiff filed a timely request for hearing, and on August 23, 2012, she and S.J.B. both appeared before Administrative Law Judge Joel G. Fina (the "ALJ"). (R. 45). The ALJ heard testimony from Plaintiff and S.J.B., who were represented by counsel, and from medical expert Lawrence James Hagerman, M.D. ("ME Hagerman"), a board-certified pediatrician. (R. 44, 63).

To accommodate Plaintiff's request to submit some additional medical and school documents, the ALJ kept the record open and then held a supplemental hearing on April 15, 2013. This time, the ALJ heard testimony from Plaintiff, who was still represented by counsel, and from Kathleen M. O'Brien, Ph.D. ("ME O'Brien"), a board-certified forensic psychologist. (R. 164, 452). Shortly thereafter, on May 2, 2013, the ALJ found that S.J.B. is not disabled because she does not have an impairment or combination of impairments that meets or functionally equals the listings. (R. 22-37). The Appeals Council denied Plaintiff's request for review on April 17, 2014, (R. 11-13), and Plaintiff now seeks judicial review of the ALJ's decision, which stands as the final decision of the Commissioner.

In support of her request for reversal or remand, Plaintiff argues that (1) she has submitted new and material evidence to this Court supporting a remand under sentence six of 42 U.S.C. § 405(g); and (2) the ALJ's decision to deny benefits is not supported by substantial evidence.

## BACKGROUND

S.J.B. was born on December 11, 2004 and was 8 years old on the date of the ALJ's decision. (R. 185). At the time of the August 23, 2012 hearing, S.J.B. was living with her mother in a shelter and was about to start attending the second grade at

Dewey Elementary School. (R. 49-50, 61). The record reflects a generally insecure living situation with frequent periods of homelessness and relocations. (R. 237, 257, 307, 346, 349).

## A. Medical and Educational History

### 1. May 10, 2010 through July 18, 2011

The first available record is from May 10, 2010 when Plaintiff took 5-year-old S.J.B. for a psychiatric evaluation with Deirdre Dupre, M.D., at Advocate Illinois Masonic Behavioral Health Services. Plaintiff reported that she and S.J.B. had been living in a shelter since February 2010 and S.J.B. was exhibiting some troubling behaviors, including hitting her teachers and intentionally declining to follow instructions. She was also physically aggressive with other children, and had difficulty controlling her anger, sharing and compromising. (R. 342, 348-49). During the examination, S.J.B. was cooperative, friendly, and interpersonally connected with good eye contact, but also hyperactive and minimally attentive. She demonstrated linear thoughts, intact attention, good mood, and fair judgment and insight, as well as normal affect, orientation and memory. (R. 344, 349). Dr. Dupre diagnosed rule out ADHD and rule out adjustment disorder, and discussed starting S.J.B. on medication after she was evaluated by a primary care physician. (R. 349-50).

When Plaintiff took S.J.B. to see Dr. Dupre again on May 27, 2010, S.J.B. continued to have attention and behavior issues, but her exam was essentially normal with no evidence of hyperactivity. Dr. Dupre affirmatively diagnosed ADHD and prescribed methylphenidate CD (brand name Metadate). (R. 356). S.J.B. did very well with the medication and showed improvement at her next two appointments with Dr.

Dupre on June 9 and July 20, 2010. (R. 351, 353). By October 2010, however, Plaintiff and S.J.B. had moved to Georgia so all treatment with Dr. Dupre ceased. Plaintiff and S.J.B. lived in a shelter in Georgia until June 2011, at which point they moved back to Chicago. (R. 362, 381). There are no records from that eight-month period, but Plaintiff applied for disability benefits on July 18, 2011, shortly after their return.

### 2.    August 2011 through December 2011

On August 10, 2011, Laura J. Higdon, Ph.D., conducted a Psychological Evaluation of 6-year-old S.J.B. for the Bureau of Disability Determination Services ("DDS"). (R. 362-65). Plaintiff reported that S.J.B. had finished Kindergarten in Georgia and did not participate in any special education programs. (R. 363). S.J.B. last took Metadate in December 2010, but Plaintiff said she planned to find S.J.B. a psychiatrist for further medication management. (R. 362, 365). On examination, S.J.B. was somewhat hyper but demonstrated intact thought process, clear speech, and adequate eye contact, and she was generally cooperative and responsive to questioning. (R. 364). Dr. Higdon diagnosed ADHD. (R. 365).

A little less than a month later, on September 6, 2011, Donald Henson, Ph.D., completed a Childhood Disability Evaluation Form of S.J.B. for DDS. (R. 366-67). Dr. Henson found that S.J.B. has less than marked limitation in attending and completing tasks and interacting and relating with others, and no other limitation in any functional domain. (R. 368-69). Shortly thereafter, on September 23, 2011, S.J.B.'s First Grade teacher at Washington Irving Elementary School, Claire Martin, completed a Teacher Questionnaire regarding S.J.B.'s functioning. (R. 237-44). Ms. Martin confirmed that S.J.B. did not receive any special services or an Individualized Education Program

("IEP") while in Georgia, and that she was similarly enrolled in regular education at Irving. (R. 237, 244). Ms. Martin identified no problems in any domain and stated that S.J.B. was "conducting herself age appropriate" and "her academics are developing adequately." (R. 244).

On October 18, 2011, Plaintiff took S.J.B. back to Dr. Dupre seeking treatment for her aggressive, impulsive, "abnormal" behavior. (R. 379, 381). More than a year had passed since S.J.B.'s last appointment, and Plaintiff reported that her daughter was being disruptive in class, talking back to teachers, and being aggressive with other children by grabbing and hitting them. She was also having difficulty establishing friendships, though Plaintiff acknowledged that could be due to the recent moves. (R. 381). At the same time, Plaintiff confirmed that S.J.B. had been "much better" while on medication. (*Id*.). Dr. Dupre noted that S.J.B. exhibited minimal attention, but her behavior and functioning was otherwise normal with no evidence of hyperactivity. (R. 379-80).

At a follow-up appointment on November 16, 2011, Plaintiff told Dr. Dupre that S.J.B. had enrolled as a First grader in regular education classes at Prairie Oak Elementary School. (R. 402). On examination, S.J.B. was cooperative and friendly with good eye contact, though at times she spoke "harsher/more direct[] than needed." She exhibited linear thought process, intact attention, good mood, and fair judgment and insight, and Dr. Dupre once again diagnosed ADHD. (R. 403). Dr. Dupre recommended that Plaintiff work with a primary care physician to get S.J.B. back on medication. (R. 403). Two days later, on November 18, 2011, Michael J. Schneider, Ph.D., affirmed Dr. Henson's finding that S.J.B. has less than marked limitation in

attending and completing tasks and interacting and relating with others, and no limitation in any other domain of functioning. (R. 388-91).

In November and December 2011, S.J.B. received two Red Light Behavior Notes from her First Grade teacher, Bonnie Polis. Ms. Polis reported that S.J.B. was having difficulty following directions in class, threw cards at another student, and was disruptive during a holiday program. The notes requested that Plaintiff speak to S.J.B. about following directions and being kind and respectful. (R. 274, 275).

### 3. 2012

Plaintiff took S.J.B. back to see Dr. Dupre on January 9, 2012, and complained that her daughter was still having difficulty with focus and attention despite exhibiting a stable mood. Dr. Dupre put S.J.B. back on Metadate to help control her ADHD. (R. 405, 415). The following month, on February 2, 2012, Ms. Polis wrote a general letter addressed "To Whom It May Concern" describing S.J.B. as "highly distractible" and disruptive in class. Ms. Polis noted that S.J.B. bullied other children, refused to take responsibility for her bad behavior, and craved "constant attention." (R. 298).

In a Teacher Questionnaire completed on February 17, 2012, Ms. Polis reported that S.J.B. did not have any problems acquiring and using information or moving about and manipulating objects, (R. 289, 292), but she had some obvious and serious to very serious problems in the other functional domains. For example, she would blurt out comments or answers without waiting to be called upon and then try to shift blame onto someone else. (R. 290). She also hit other children and said "cruel and rude" things to them. (R. 291, 295). Ms. Polis stated that S.J.B.'s significant problem areas included paying attention, focusing, refocusing to task, waiting to take turns, changing activities

without being disruptive, working without distracting others, playing cooperatively with other children, making and keeping friends, seeking attention appropriately, following rules, taking turns, interpreting the meaning of facial expressions, asking permission, respecting/obeying adults in authority, handling frustration appropriately, being patient when necessary, identifying and appropriately asserting emotional needs, and responding appropriately to changes in her own mood. (R. 290-91, 293).

Not surprisingly, Plaintiff told Dr. Dupre on February 27, 2012 that S.J.B. was still having behavioral difficulties at school, even on the Metadate. Dr. Dupre switched her to Focalin, which S.J.B. took until April 2012. (R. 413, 418). Then on May 23, 2012, S.J.B. received a four-day lunch detention for saying inappropriate things of a sexual nature to other students. (R. 300). Plaintiff took S.J.B. back to see Dr. Dupre on July 25, 2012, explaining that since stopping the medication, S.J.B. was having increased difficulties with attention, compliance, impulsivity and interpersonal issues. (R. 418). On examination, S.J.B. was hyperactive with minimal attention, but everything else was normal. (R. 416, 428). Dr. Dupre once again prescribed Focalin to help with S.J.B.'s ADHD, (R. 418), and by August 22, 2012, her behavior was under control aside from a continuing tendency towards rudeness. (R. 430).

On October 1, 2012, Plaintiff's counsel submitted a note to DDS from Lisa Davis, S.J.B.'s Second Grade teacher at her new school, Dewey Elementary. (R. 312). Ms. Davis stated that S.J.B. often talked to peers when she should have been working independently or following teacher lessons. She also communicated in an uncaring way and rolled her eyes. That said, when S.J.B. was focused, she could respond to questions and prompts appropriately and complete her work. (R. 313).

On October 16, 2012, Don White, Ph.D., performed a Psychological Evaluation of S.J.B. for DDS. (R. 432-34). Dr. White found that S.J.B. exhibited adequate "Adaptive Behavioral Functioning" except in the area of "Interpersonal/Social" interactions. She showed no impairment in "Immediate, Recent or Remote Memory Functioning," and adequate "Fund of Information," "Ability to do Calculations," and "Ability to Analyze and Synthesize Data." Dr. White observed adequate abstract thinking and fair judgment, and diagnosed ADHD. (R. 434).

A couple months later, on December 13, 2012, S.J.B. switched schools from Dewey Elementary to Helge A. Haugan Elementary. (R. 324). She had just turned eight years old.

### 4. 2013 through 2014

S.J.B.'s Second Grade teacher at Haugan, Sugey Santana, sent a handwritten note home on January 15, 2013 advising Plaintiff that S.J.B. was not following classroom rules, kept talking in line and interrupting the teacher, and argued with others throughout the day. She also "gives attitude" to both teachers and students. Ms. Santana asked Plaintiff to acknowledge receipt of the note. (R. 320).

Shortly thereafter, on March 20, 2013, Ms. Santana completed a Teacher Questionnaire on S.J.B. (R. 324-31). Ms. Santana reported that S.J.B. had no problems acquiring and using information, moving about and manipulating objects, or caring for herself. (R. 325, 328-29). She did, however, have a serious problem working without districting herself or others and taking turns in conversation, and an obvious problem focusing long enough to finish assigned activity, changing from one activity to another without being disruptive, completing class/homework assignments, making and

keeping friends, seeking attention appropriately, and respecting/obeying adults in authority. (R. 326-27). Ms. Santana stressed that while S.J.B. tended to avoid completing tasks, she was "capable of doing [them]" and finished successfully when isolated from other students. (R. 326).

Toward the end of the school year on May 20 and 24, 2013, S.J.B. received detention for not following her teacher's redirection and arguing with another student, and for admitting to hitting, grabbing and scratching a student at recess. (R. 332, 333, 336). The following school year, S.J.B. switched to Glenwood Academy, a boarding school for at-risk children. Her behavior problems continued, and on October 10, 2013, the Residential Supervisor, Bryan E. Warner, sent Plaintiff a report stating that S.J.B. was working hard but having some difficulty communicating with staff and students. (R. 3). This included frequently staring at people, laughing at inappropriate times, making inappropriate comments about other students and their family members, engaging in minor hitting and kicking of students, and being rude and disrespectful. (*Id.*). Over the next few months, S.J.B. received two suspensions and a loss of privileges due to similar behavioral problems. (R. 5).

## B. Plaintiff's Testimony

Plaintiff testified at the August 23, 2012 hearing that S.J.B. has trouble keeping good relationships because she is "somewhat of a bully" with inappropriate behavior. (R. 51). In addition to fighting with other children, she throws tantrums and struggles to maintain focus and attention. (R. 52). When S.J.B. is on medication, it makes a "huge difference," allowing her to focus and concentrate better with no violent outbursts. (R. 53-54). In fact, with Focalin, S.J.B. is "like a normal child." (R. 55). Plaintiff

acknowledged that S.J.B. had gotten in trouble at school in May 2012 but explained that she was not taking her medicine at that time. (R. 55). Plaintiff also noted that S.J.B. had fun playing with a little girl at the shelter until the evening when her medication wore off. (R. 59).

At the April 15, 2013 hearing, Plaintiff testified that S.J.B.'s grades were "very good," and that "[a]cademically she's doing great." (R. 465). S.J.B. was still taking Focalin (dexmethylphenidate) but Plaintiff thought she needed a higher dosage because the effects wore off "very fast." (R. 465-66).

## C.    Medical Expert Testimony

ME Hagerman testified at the August 23, 2012 hearing that S.J.B. suffers from ADHD and an adjustment disorder with a disturbance of emotions and conduct. (R. 63). When S.J.B. is medicated, she is no longer hyperactive and her level of inattention is low. (R. 64-65). She also performs at grade level despite the behavioral issues, and she has no limitation in acquiring and using information, moving about and manipulating objects, or health and physical well-being. (R. 65, 66, 69). At the same time, ME Hagerman opined that due to her conduct disorder, S.J.B. has marked limitation in impulsiveness and interacting and relating with others, even when she is taking medication. (R. 65-66, 68). When medicated, S.J.B. has less than marked limitation in attending and completing tasks, but it becomes a marked limitation without medication. (R. 67). Finally, ME Hagerman found that S.J.B. has a less than marked limitation in the domain of caring for herself. (R. 69).

At the April 15, 2013 hearing, ME O'Brien testified that S.J.B. suffers only from ADHD that does not meet or equal the listings. (R. 455-56). Though Dr. Dupre

diagnosed rule out adjustment disorder in May 2010, ME O'Brien stated it was a "temporary short-term kind of experience while the child is getting adjusted to" being homeless, and was non-severe given that the diagnosis never appeared again in any subsequent medical records.  (R. 466).  With respect to the functional domains, ME O'Brien first noted that no one has ever recommended that S.J.B. receive special services despite her difficulties at school, (R. 456), and that she was never removed from the classroom or given an IEP.  (R. 458).  She also stressed that S.J.B. responds to medication.  (R. 459).  ME O'Brien then testified that S.J.B. has no limitation in acquiring and using information, manipulating objects, or caring for herself, and she has less than marked limitation in attending and completing tasks and interacting and relating with others.  (R. 459-60).  In ME O'Brien's opinion, S.J.B. has no marked limitations even when she is not taking her medication.  (R. 460-61).

**D.     The ALJ's Decision**

The ALJ found that S.J.B., an eight-year-old school-age child at the time of the decision, suffers from ADHD, a severe impairment that does not meet or equal the listings.  (R. 25-26).  After discussing the medical and school evidence in detail, the ALJ also determined that S.J.B.'s ADHD is not functionally equivalent to the listings because she does not suffer from at least two marked impairments or one extreme impairment in the six domains of functioning.  Specifically, S.J.B. has (1) no limitation in acquiring and using information; (2) less than marked limitation in attending and completing tasks; (3) either marked or less than marked limitation in interacting and relating with others;[2] (4)

---

[2]     The ALJ's discussion of S.J.B.'s functionality in the domain of interacting and relating with others is a bit confusing.  At one point the ALJ stated:  "<u>The claimant has marked limitation</u>" in that domain, but he thereafter accepted ME O'Brien's opinion that S.J.B. has less than marked limitation in that area.  (R. 34) (emphasis in original).  In her memorandum in support of

no limitation in moving about and manipulating objects; (5) less than marked limitation in caring for herself; and (6) no limitation in health and physical well-being. (R. 30-37).

In reaching this conclusion, the ALJ afforded great weight to ME O'Brien's opinion; some weight to ME Hagerman's opinion; some weight to the opinions from Dr. Higdon, Dr. White, Dr. Henson and Dr. Schneider; and some weight to the assessments from S.J.B.'s First and Second Grade teachers, Ms. Martin and Ms. Santana. (R. 29, 30). The ALJ did not give weight to Ms. Polis's assessment to the extent it conflicted with the reports from other teachers, the opinions of record, and Plaintiff's own testimony that S.J.B. gets "very good grades" and has proper academic functioning. (R. 30). As for Plaintiff's testimony (and S.J.B.'s brief statements at the first hearing), the ALJ found that the objective evidence did not support the claimed intensity and limiting effect of S.J.B.'s ADHD symptoms. (R. 27).

Based on all of these findings, the ALJ concluded that S.J.B. was not disabled within the meaning of the Act at any time between July 18, 2011 and May 2, 2013.

## DISCUSSION

### A.     Standard of Review

Judicial review of the Commissioner's final decision is authorized by § 405(g) of the Social Security Act. *See* 42 U.S.C. § 405(g). In reviewing this decision, the court may not engage in its own analysis of whether the claimant is severely impaired as defined by the Social Security Regulations. *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004) (citation omitted). Nor may it "displace the ALJ's judgment by reconsidering facts or evidence or making credibility determinations." *Skinner v. Astrue*, 478 F.3d

---

summary judgment, however, the Commissioner assumes that S.J.B. is markedly limited in one domain. (Doc. 21, at 1).

836, 841 (7th Cir. 2007). The court's task is to determine whether the ALJ's decision is supported by substantial evidence, which is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Schmidt v. Astrue*, 496 F.3d 833, 841 (7th Cir. 2007) (quoting *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)). In making this determination, the court must "look to whether the ALJ built an 'accurate and logical bridge' from the evidence to [his] conclusion that the claimant is not disabled." *Simila v. Astrue*, 573 F.3d 503, 513 (7th Cir. 2009) (quoting *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008)). Where the Commissioner's decision "'lacks evidentiary support or is so poorly articulated as to prevent meaningful review,' a remand is required." *Hopgood ex rel. L.G. v. Astrue*, 578 F.3d 696, 698 (7th Cir. 2009) (quoting *Steele v. Barnhart,* 290 F.3d 936, 940 (7th Cir. 2002)).

**B.     Framework for Child SSI Benefits**

A child is disabled within the meaning of the Social Security Act if she has a "physical or mental impairment, which results in marked and severe functional limitations, and . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(I). In determining whether a child meets this definition, the ALJ engages in a three-step analysis: (1) if the child is engaged in substantial gainful activity, then her claim is denied; (2) if the child does not suffer from a severe impairment or combination of impairments, then her claim is denied; and (3) the child's impairments must meet, medically equal, or be functionally equal to any of the Listings of Impairments contained in 20 C.F.R. pt. 404, subpt. P, App. 1., 20 C.F.R. § 416.924(b)-(d). *See also Giles ex rel. Giles v. Astrue*, 483 F.3d 483, 486 (7th Cir. 2007).

To determine whether an impairment functionally equals a listing, the ALJ must assess its severity in six age-appropriate categories: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1). Each domain describes what a child should be able to do throughout five age categories: (1) "newborns and young infants" (birth to age 1); (2) "older infants and toddlers" (age 1 to age 3); (3) "preschool children" (age 3 to age 6, including children in kindergarten but not first grade); (4) "school-age children" (age 6 to age 12, including children in first grade through middle school); and (5) "adolescents" (age 12 to age 18). 20 C.F.R. § 416.926a(g)(2), (h)(2), (i)(2), (j)(2), (k)(2), (l)(2).

An impairment functionally equals a listing if it results in "marked" limitations in two domains of functioning, or an "extreme" limitation in one domain. A marked limitation "interferes 'seriously' with the child's ability to independently initiate, sustain, or complete activities in the domain, and an 'extreme' limitation interferes 'very seriously.'" *Buckhanon ex rel. J.H. v. Astrue*, 368 Fed. Appx. 674, 679 (7th Cir. 2010). The functional equivalence analysis requires the ALJ to consider how the child functions as a whole. "[T]his consists of looking at all of the child's activities, which include everything the child does at home, at school, and in h[is] community, and evaluating how the child is limited or restricted in those activities, without cabining the child's impairments into any particular domain." *Bielefeldt ex rel. Wheelock*, No. 09 C 50302, 2011 WL 3360013, at *4 (N.D. Ill. Aug. 4, 2011) (citing 20 C.F.R. § 416.926a(b)-(c)).

**C.     Analysis**

Plaintiff argues that the ALJ's decision should be remanded for two reasons: (1) the ALJ needs to consider some new and material evidence pursuant to sentence six of 42 U.S.C. § 405(g); and (2) the ALJ's decision to deny benefits is not supported by substantial evidence.   The Court considers each argument in turn.

**1.     New Evidence**

Plaintiff first asks the Court to remand the case so the ALJ can consider three new documents she has submitted pertaining to S.J.B.'s condition.   The first document consists of notes from a November 17, 2014 staffing meeting at Glenwood Academy, which Plaintiff participated in via teleconference.   According to those notes, S.J.B. was "doing very well academically" in her Fourth Grade year, but she struggled to get along with girls her own age and had ongoing behavior problems.   (Doc. 15, at 2).   The second document is a December 9, 2014 letter from Jada Johnson, M.D., stating that S.J.B. had been receiving services at Advocate since June 2, 2014 for her "Mood Disorder and ADHD."  Dr. Johnson indicated that she was handling S.J.B.'s medication monitoring (Focalin), and that Betty Laan Vander was seeing S.J.B. for individual therapy.   (Doc. 15, at 3).   The final document is a February 24, 2015 letter stating that S.J.B. was being expelled from Glenwood Academy "due to bullying and threatening another student several times over the past couple of months," resulting in physical injury to that student.   (Doc. 22).

Sentence six of 42 U.S.C. § 405(g) authorizes courts to remand a case to the Commissioner if "the claimant submits 'new and material evidence' that, in addition to the evidence already considered by the ALJ, makes the ALJ's decision 'contrary to the

weight of the evidence' in the record." *Getch v. Astrue*, 539 F.3d 473, 483 (7th Cir. 2008) (quoting 20 C.F.R. § 404.970(b)). Evidence is considered "material" if there is a "reasonable probability that the ALJ would have reached a different conclusion had the evidence been considered." *Schmidt v. Barnhart*, 395 F.3d 737, 742 (7th Cir. 2005). "Medical evidence postdating the ALJ's decision, unless it speaks to the patient's condition at or before the time of the administrative hearing, could not have affected the ALJ's decision and therefore does not meet the materiality requirement." *Getch*, 539 F.3d at 484.

Here, the November 17, 2014 notes, the December 9, 2014 letter from Dr. Johnson, and the February 24, 2015 expulsion letter all postdate the ALJ's May 2, 2013 decision by more than a year and a half, and none addresses S.J.B.'s condition during the time her application for benefits was under administrative review. The staffing notes from Glenwood Academy discuss S.J.B.'s academic and behavioral functioning as of November 2014, and set forth a future plan to move her into a new dorm, start her on counseling services, and follow up with her mother in February 2015. (Doc. 15, at 2). The fact that S.J.B. was having behavioral problems is certainly not new, as that has always been the crux of Plaintiff's request for benefits, and the ALJ discussed those problems in detail. (R. 27-30). There is also nothing in the staffing notes that has any bearing on S.J.B.'s functioning back in May 2013 when the ALJ rendered his decision.

Dr. Johnson's December 2014 letter similarly fails the materiality test, as she confirms that she did not even start treating S.J.B. until June 2, 2014, which is more than a year after the ALJ's decision (and more than a month after the Appeals Council denied Plaintiff's request for review on April 17, 2014). Under such circumstances, Dr.

Johnson's opinion says nothing about S.J.B.'s condition during the administrative review process and could not have had any effect on the ALJ's decision. Finally, the February 2015 expulsion note expressly explains that the decision to terminate S.J.B.'s placement at Glenwood Academy was due to behavior occurring over the prior "couple of months," meaning late 2014 and early 2015. (Doc. 22). Once again, this evidence says nothing about S.J.B.'s functioning at the time of the administrative hearing or the ALJ's decision, and so does not meet the materiality requirement for a sentence six remand.

The Court recognizes that S.J.B.'s new diagnosis of a Mood Disorder, combined with her recent expulsion from boarding school, may indicate that her condition has worsened since the ALJ's May 2013 decision, an argument made in Plaintiff's motion. (Doc. 15). If so, Plaintiff's recourse is to file a new application for benefits, not seek to revisit the current application. *Getch*, 539 F.3d at 484 ("If Mr. Getch has developed additional impairments, or his impairments have worsened, since his first application for benefits, he may submit a new application."). *See also McFadden v. Astrue*, 465 Fed. Appx. 557, 560 (7th Cir. 2012) (evidence which shows that an impairment has worsened "is not material because it does not describe [the plaintiff's] condition in the period before the ALJ rendered her decision.").

To summarize, the new documents Plaintiff submitted to the Court do not have any bearing on S.J.B.'s condition at or before the time of the administrative hearing. *Getch*, 539 F.3d at 484. As a result, they are not material for purposes of a sentence six remand, and Plaintiff's request for a ruling in her favor on that basis must be denied.

## 2.    Substantial Evidence Supports the ALJ's Decision

Plaintiff also objects that the ALJ erred in finding that S.J.B.'s ADHD is not a disabling impairment.  Plaintiff does not point to any particular line of evidence the ALJ failed to consider when making that determination, or challenge any specific aspect of the decision.  Instead, she states without any supporting authority that S.J.B. may have some sort of unidentified "degenerative illness" that "can affect [her] psychologically," and claims that "after extreme observation and after carefully examining the ALJ decision," it was "not supported by substantial nor further evidence per SSA."  (Doc. 15).

Viewing the record as a whole, the Court is satisfied that the ALJ's decision is in fact supported by substantial evidence and there is no justification for remanding the case.  As a preliminary matter, ME Hagerman, ME O'Brien, Dr. Henson and Dr. Schneider all agreed that S.J.B.'s ADHD does not meet or equal one of the listings.  (R. 66, 366, 388, 455-56).  Absent any evidence to the contrary, the ALJ reasonably accepted these opinions and proceeded to analyze S.J.B.'s functioning in each domain.

### a.    Acquiring and Using Information

Looking first to acquiring and using information, this domain "refers to how well a child acquires or learns information and how well [s]he uses the information [s]he has learned." *Hopgood ex rel. L.G.*, 578 F.3d at 699.  A school-age child between the ages of 6 and 12 (like S.J.B.) "should be able to learn to read, write, and do math, and discuss history and science." *Coleman ex rel. J.C. v. Colvin*, 981 F. Supp. 2d 749, 759 (N.D. Ill. 2013) (citing 20 C.F.R. § 416.926a(g)).  She should also be able to "produce oral and written projects, solve math problems, and take tests," as well as "apply those skills to daily living situations at home and in the community." *Id.*

In finding that S.J.B. has no limitation in this domain, the ALJ noted that Plaintiff herself testified that S.J.B. gets "very good" grades and is "doing great" academically, a sentiment confirmed by S.J.B.'s teachers (Ms. Martin, Ms. Polis and Ms. Santana). (R. 31, 238, 289, 465). The ALJ also observed that S.J.B. has never been recommended for special education classes or an IEP, and that both ME Hagerman and ME O'Brien opined that she has no limitation when it comes to acquiring and using information. (R. 31, 66, 459). The Court finds no error in this determination.

b.     **Attending and Completing Tasks**

The domain of attending and completing tasks considers "how well [school-age children] are able to focus and maintain [their] attention and how well [they] begin, carry through, and finish activities, including the pace at which [they] perform activities and the ease with which [they] change them." *Coleman ex rel. J.C.*, 981 F. Supp. 2d at 761 (quoting 20 C.F.R. § 416.926a(h)). A school-age child "should be able to focus [her] attention in a variety of situations in order to follow directions, remember and organize [her] school materials, and complete classroom and homework assignments . . . [and] concentrate on details and not make careless mistakes in [her] work . . ." *Id.* (quoting 20 C.F.R. § 416.926a(h)(2)(iv)).

The ALJ acknowledged that S.J.B.'s ADHD causes documented symptoms of inattention and hyperactivity, but also found it significant that her medical records demonstrate that she is not hyperactive when properly medicated and compliant. (R. 32-33). *See, e.g., Skinner*, 478 F.3d at 845 (claimant was not disabled where her symptoms were "largely controlled with proper medication and treatment."). In addition, as noted earlier, S.J.B. has "successfully progressed through school in regular

education courses, has never required an IEP, and has obtained 'very good grades' according to her mother" despite the attention problems. (R. 33). S.J.B.'s First and Second Grade teachers (again, Ms. Martin, Ms. Polis and Ms. Santana) all agreed that S.J.B. has only slight to obvious limitations in attending and completing tasks, which the ALJ viewed as consistent with the opinions from Dr. Henson, Dr. Schneider, ME Hagerman and ME O'Brien that S.J.B. has a less than marked limitation in this domain. (R. 33, 67, 238, 289, 313, 325, 368, 390, 459). On the record presented, the ALJ's finding is supported by substantial evidence.

### c. Interacting and Relating with Others

The next domain, interacting and relating with others, is defined as "how well the claimant initiates and sustains emotional connections with others, develops and uses the language of h[er] community, cooperates with others, complies with rules, responds to criticism, and respects and takes care of the possessions of others." *M.W. ex rel. Terry v. Astrue*, No. 10 C 7813, 2012 WL 1532386, at *8 (N.D. Ill. Apr. 30, 2012) (citing 20 C.F.R. § 416.926a(a)(i)). A school-age child like S.J.B. "should be developing more lasting friendships with children who are of the same age"; "should begin to understand how to work in groups to create projects and solve problems"; and "should be able to talk to people of all ages, to share ideas, tell stories, and to speak in a manner that both familiar and unfamiliar listeners can readily understand." *Id.*

Most of the physicians of record who considered S.J.B.'s functioning in this domain, including Dr. Henson, Dr. Schneider, and ME O'Brien, concluded that she has a less than marked limitation. (R. 34, 368, 390, 459-60). There is some support for this viewpoint. Despite S.J.B.'s problems with "classroom interruptions, talking in line, and

arguing or bullying others," she was never diagnosed with a behavior disorder or recommended for special education services.[3] (R. 34). In addition, mental status exams with Dr. Dupre, Dr. Higdon and Dr. White, consistently showed that S.J.B. was pleasant, cooperative, friendly, and interpersonally connected with good eye contact. (R. 34, 344, 349, 356, 364, 379-80, 403, 405, 416, 430, 432-33).

At the same time, ME Hagerman testified that S.J.B. has a marked limitation in interacting and relating with others, even when she is on medication. (R. 68). The ALJ acknowledged this testimony but noted that ME Hagerman did not review additional relevant evidence submitted after the first hearing, and concluded that his opinion was inconsistent with S.J.B.'s medical evaluations and school performance records. (R. 29). "Faced with competing opinions, the ALJ had to decide which opinion to credit," and the Court "cannot say, as a matter of law, that the ALJ made the wrong choice here." *Liskowitz v. Astrue*, 559 F.3d 736, 742 (7th Cir. 2009).

This does not end the Court's inquiry, however, because Defendant has presumed in her memorandum that S.J.B. is markedly limited in this domain. (Doc. 21, at 1). Assuming for the sake of argument that the ALJ erred in failing to make his finding clear on this issue, and that S.J.B. has a marked limitation in interacting and relating with others, the Court must determine whether that error requires a remand. It is well-established that errors of articulation are "subject to harmless-error review, and we will not remand a case to the ALJ for further explanation if we can predict with great

---

[3]     As noted earlier, ME Hagerman testified that S.J.B. was diagnosed with an adjustment disorder, (R. 63), but ME O'Brien pointed out that Dr. Dupre actually diagnosed only "rule out adjustment disorder" in May 2010, after which time neither she nor any other physician of record made any further reference to that condition. (R. 466). The ALJ reasonably adopted ME O'Brien's opinion that any adjustment disorder was at best a temporary and non-severe impairment. (R. 25).

confidence that the result on remand would be the same." *Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013). Here, any alleged error on the part of the ALJ must be deemed harmless unless S.J.B. also has a marked limitation in at least one other domain. *Ferguson ex rel. A.F. v. Astrue*, No. 11 C 2248, 2013 WL 788089, at *12 (N.D. Ill. Mar. 1, 2013) (a child functionally equals a listing and qualifies for disability benefits if she has a marked limitation in at least two of the six domains).

The Court has already determined that the ALJ acted reasonably in finding that S.J.B. does not have a marked limitation in acquiring and using information and attending and completing tasks. As discussed below, moreover, substantial evidence also supports the ALJ's conclusion that S.J.B. has less than marked or no limitation in the remaining three domains of functioning. Under such circumstances, a remand "would be a waste of time and resources for both the Commissioner and the claimant," as the end result would be the same. *McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir. 2011).

### d.    Moving About and Manipulating Objects

The domain of moving about and manipulating objects considers "how well a child is able to move h[er] body from one place to another and how a child moves and manipulates objects." *M.W. ex rel. Terry*, 2012 WL 1532386, at *9 (citing 20 C.F.R. § 416.926a(j)). A school-age child like S.J.B. should be able to "do things like use many kitchen and household tools independently, use scissors, and write." *Id.*

The record contains no evidence suggesting that S.J.B. has any difficulties in this area. S.J.B.'s teachers never documented any problems with her mobility or her ability to manipulate objects, Plaintiff did not allege any such deficiencies, and ME Hagerman,

ME O'Brien, Dr. Henson and Dr. Schneider all opined that S.J.B. has no limitation in this domain. (R. 35, 241, 292, 328). On the record presented, the ALJ's finding of no limitation in moving about and manipulating objects is supported by substantial evidence.

### e. Caring for Yourself

The Regulations explain that the domain of caring for yourself reflects "how well a child maintains a healthy emotional and physical state, including how well a child satisfies h[er] physical and emotional wants and needs in appropriate ways." *M.W. ex rel. Terry*, 2012 WL 1532386, at *9 (citing 20 C.F.R. 416.926a(k)). School-age children "should be independent in most day-to-day activities (e.g., dressing yourself, bathing yourself) . . . and should begin to develop understanding of what is right and wrong, and what is acceptable and unacceptable behavior." 20 C.F.R. § 416.926a(k)(2)(iv). They should also "begin to demonstrate consistent control over [their] behavior, and . . . be able to avoid behaviors that are unsafe or otherwise not good for [them]." *Id.*

The ALJ found that S.J.B. has less than marked limitation in this domain, citing first to educational records and teacher opinions demonstrating that she "is generally independent at school" and has no problem caring for her needs. (R. 36, 242, 329). One teacher, Ms. Polis, did document some serious problems handling frustration appropriately, being patient when necessary, identifying and appropriately asserting emotional needs, and responding appropriately to changes in own mood (e.g., calming self). (R. 293). The ALJ did not assign Ms. Polis's opinion any weight, however, explaining in accordance with SSR 06-03p that it conflicted not only with the records from the other teachers, who found no limitation in this area, but also with opinions from

the medical experts. (R. 30). In that regard, Dr. Henson, Dr. Schneider and ME O'Brien found that S.J.B. has no limitation in this domain, and ME Hagerman agreed that any such problems are at most less than marked. (R. 36, 69, 369, 391, 460).

Viewing the record as a whole, substantial evidence supports the ALJ's finding that S.J.B. has less than marked limitation in caring for herself.

### f. Health and Physical Well-Being

The final domain, health and physical well-being, considers "the cumulative physical effects of physical or mental impairments and their associated treatments or therapies on [a child's] functioning." 20 C.F.R. § 416.926a(l). All of the physicians of record who considered S.J.B.'s functioning in this domain, including Dr. Henson, Dr. Schneider and ME Hagerman, agreed that she has no limitation. (R. 37, 69, 369, 391). The ALJ acknowledged that S.J.B. takes medication for her ADHD but also observed that there is no evidence that it causes any significant side effects. (R. 37). The Court finds no error in this determination.

### g. Summary

The ALJ reasonably found that S.J.B. does not have a marked impairment in two domains of functioning, or an extreme impairment in one domain. His decision to deny benefits is supported by substantial evidence, and Plaintiff's request for remand on this basis is denied.

### CONCLUSION

For the reasons stated above, Plaintiff's motion for summary judgment is denied, as is her motion to transfer the case to Pennsylvania [Doc. 23]. Defendant's motion for

summary judgment [Doc. 20] is granted. The Clerk is directed to enter judgment in favor of Defendant.

ENTER:

Dated: July 29, 2015

SHEILA FINNEGAN
United States Magistrate Judge